**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SERGIO MARTIN ORTEGA,          § | | |
|     ID # 36101-177,                        § | | |
|         Plaintiff,                              § | | |
| vs.                                                 § | | No. 3:10-CV-1677-K-BH |
|                                     § | | |
| ATF OFFICER BADGE #4706, et al.,  § | | |
|         Defendants.                        § | | Referred for Pretrial Management |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case was automatically referred for findings, conclusions, and recommendation. Based on the relevant filings and applicable law, Plaintiff's claims should be **DISMISSED**.

**I. BACKGROUND**

On August 26, 2010, Plaintiff filed this suit under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* (FTCA), 42 U.S.C. § 1983, and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against the United States of America, named and unnamed federal officers in their official and individual capacities, and named and unnamed state officers in their individual capacities, for excessive force and denial of medical care in connection with his arrest. (*See* Docs. 1, 9, 11, 14.)[1] He also asserts claims for violation of the Vienna Convention and seeks $10 million in damages. (Doc. 1 at 5; Doc. 9 at 5, 11-12.)

Plaintiff alleges that at approximately 8:30 p.m. on March 8, 2006, he noticed an individual looking into one of the windows of his residence. (*See* Doc. 1 at 2.) The individual began tapping on the window with what Plaintiff thought was a gun. (*Id.*) Fearing for his safety, he fired a nail

---

[1]Plaintiff's answers to the Magistrate Judge's Questionnaires (MJQ) constitute amendments to his complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

gun to scare the individual. (*Id*.) When the individual moved away and shouted, "the M[------] F[------] Got a Gun, Shoot the M[------] F[------]", and Plaintiff heard a radio, he assumed that the individual was a police officer. (*Id*.) Plaintiff yelled out not to shoot, that he was coming out, and opened the door to surrender. (*Id*.) Two officers grabbed him, threw him down, handcuffed and blindfolded him, dragged him to the backyard, and proceeded to beat him. (*Id*.) After Plaintiff yelled "stop", the beating stopped, and someone removed his blindfold. (*Id*. at 2-3.) Plaintiff saw a man later identified as Detective Caldwell standing over him. (*Id*. at 3.)

Plaintiff was placed in a police vehicle and taken to an interrogation room. (*Id*.) Detective Caldwell came into the room, put a tape recorder on the table, and told Plaintiff that they needed to talk. (*Id*.) Plaintiff asked to see a doctor and talk to an attorney. (*Id*.) Caldwell told him that paramedics were outside the room waiting to see him, but he needed to answer some questions first. (*Id*.) Plaintiff told Caldwell that he shot at the floor with a nail gun to scare off what he thought was a burglar and asked to see the paramedics and an attorney. (*Id*.) Caldwell told Plaintiff that he wanted to hear the truth, and Plaintiff insisted he had been truthful. (*Id*.) He complained that he had been beaten badly and was in a lot of pain and again asked to see the paramedics and an attorney. (*Id*.) Caldwell told him, "thats (sic) not what we want to hear" several times, so Plaintiff finally screamed "All right I shot a real gun. Is that what you want to hear? Now take me to the paramedics and to see an attorney." (*Id*.) Caldwell said, "that's all we wanted to hear", and told a gang unit officer to take Plaintiff to the paramedics. (*Id*.)

After leaving the room, the gang unit officer told Plaintiff that he was going to tell the paramedics not to treat him. (*Id*. at 3-4.) Plaintiff asked him not to do that and said that he was severely injured. (*Id*.) Plaintiff contends that the gang unit officer told the paramedics not to treat

2

him, and they did not treat him. (*Id*.)  The gang unit officer told Plaintiff that he would also tell the jail nurse not to treat him. (*Id*.)  When they arrived at the jail, the gang unit officer told the nurse not to treat him. (*Id*.)  The nurse told Plaintiff, "your (sic) OK", gave him two aspirin, and sent him to a holding cell. (*Id*.)

Plaintiff complained of his injuries for three to four months. (*Id*.)  He had difficulty with bowel movements for weeks and urinated blood. (*Id*.)  His vision was blurry, and he still had pain after the swelling in his hand reduced. (*Id*.)  The nurse took x-rays, but "they" still would not take him to the hospital. (*Id*.)  He was finally taken to a hospital for surgery on or about July 7, 2006, after his attorney made a request for medical attention. (*Id*.)

On November 9, 2009, Plaintiff mailed a claim for damages to the U.S. Department of Justice (DOJ). (*Id*. at 1.)  He subsequently received a response informing him that the claim had been denied as barred by the statute of limitations. (*Id*. at 2.)  He then filed this lawsuit.  No process has been issued.

## II.  PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*.  As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

3

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed," pursuant to 28 U.S.C. § 1915(e)(2)(B). *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993); *accord*, *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006). Courts "may raise the defense of limitations *sua sponte*." *Stanley*, 464 F.3d at 568 (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999)).

### III. FTCA

Plaintiff sues the United States and Bureau of Alcohol Tobacco and Firearms (ATF) agent Ashley Stephens (Badge # 4706) in his official capacity under the FTCA. (Doc. 1 at 1, 5; Doc. 11 at 1; Doc. 14 at 1.)

"In the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008); *see also* 28 U.S.C. §§ 1346(b)(1), 2671-2680. The FTCA shields federal officers from official capacity suits because these types of suits are actually against the government. *See Smart v. Holder*, No. 09-50796, 2010 WL 759164, at *2 (5th Cir. Mar. 5, 2010) (citing *Boehms v. Crowell*, 139 F.3d 452, 462-63 (5th Cir. 1998); *S. Sog, Inc. v. Roland*, 644 F.2d 376, 380 (5th Cir. Unit A May 1981)). Any claims against them in their official capacities are treated as a suit against the United States.

*Connor v. Matthews*, 134 F.Supp.2d 797, 799 (N.D.Tex. 2001).[2]  To successfully sue under the FTCA, a claim must be: 1) against the United States; 2) for money damages; 3) for injury or loss of property, or personal injury or death; 4) caused by the negligent or wrongful act or omission of any employee of the federal government; 5) while acting within the scope of his or her employment; and 6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the state law where the act or omission occurred.  28 U.S.C. § 1346(b); *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994).

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the Tort Claims Act, and absent compliance with the statute's requirement [a] district court [is] without jurisdiction."  *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989).  Section 2675(a) provides, in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

Presentment of an administrative claim within two years of accrual is also a jurisdictional requirement.  *See In re FEMA Trailer Formaldehyde Products Liability Litigation*, 646 F.3d 185, 189 (5th Cir. 2011) (per curiam) (citing *Flory v. United States*, 138 F.3d 157, 159 (5th Cir. 1998)); 28 U.S.C. § 2401(b) (providing that "[a] tort claim against the United States shall be forever barred

---

[2]The only proper defendant in an FTCA action is the United States.  *See* 28 U.S.C. § 2679(a); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988).  Individual defendants cannot be sued under the FTCA in their individual capacity.  *Id.*

5

unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues"). The statute of limitations begins running from the time the plaintiff knows or has reason to know of his injury. *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001).

Here, Plaintiff alleges that he mailed an administrative claim to the United States Department of Justice (DOJ) on November 9, 2009, that has been denied. (Doc. 1 at 1-2.) He knew of his injuries on March 8, 2006, the day of his alleged beating and arrest. *Id.* at 2-3. He concedes that he knew the date his cause of action accrued, and that more than two years elapsed before he presented his formal administrative claim. (Doc. 14 at 3.). Relying on *Perez v. United States*, 167 F.3d 913, 918 (5th Cir. 1999), Plaintiff contends his claim should be equitably tolled because the U.S. government received "actual notice" of his claim within the two-year period when his counsel advised the prosecutor in writing of Plaintiff's alleged beating and filed written demands with the jail seeking medical attention for Plaintiff. (*Id.*)

In *Perez,* the Fifth Circuit began by noting that "whether the limitations provisions of the FTCA are jurisdictional-in which case equitable tolling could not apply-remains an open question in this circuit." 167 F.3d at 915. It went on to find that equitable tolling should be available in FTCA cases "where the principles of equitable tolling would ordinarily apply", such as when the plaintiff timely filed a defective pleading or had been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* at 917. Because Perez had timely presented her claim to the proper entity but in the wrong capacity, and the entity failed to follow the applicable regulations to forward her a claim form, the court found equitable tolling applicable. *Id.* at 918. More recently, however, the Fifth Circuit has noted that because compliance with the statutory filing period in FTCA cases is jurisdictional, equitable tolling is inapplicable. *See In re*

6

*FEMA*, 646 F.3d at 190-91 (citing *Ramming*, 281 F.3d at 165); *see also In re FEMA Trailer Formaldehyde Products Liability*, 2009 WL 2599195, at *2 n.2 (E.D.La. Aug. 21, 2009) (noting that the Supreme Court's decision in *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130 (2008), that a similar limitations provision was jurisdictional likely answers the question) (citing *Marley v. United States,* 567 F.3d 1030, 1034-37 (9th Cir.2009)).  Even assuming that equitable tolling is available in an FTCA action, it has been granted most frequently based on the defendant's misconduct.  *See Wilson v. U.S. Penitentiary Leavenworth*, 2011 WL 5599583, at *1 (5th Cir. Nov. 17, 2011), slip copy; *Teemac v. Henderson*, 298 F.3d 452, 456 (5th Cir. 2002).  Plaintiff has not alleged any misconduct that prevented him from timely filing his claim.[3]

Because Plaintiff failed to file his FTCA claims within two years of the date they accrued, his claims are time-barred and should be dismissed.

### III.  42 U.S.C. § 1983

Plaintiff asserts claims against Dallas Police Department (DPD) Officers Michael Reuler (Badge # 7844), Oscar Carrasco (Badge # 7524), R. Ramos (Badge # 6857), Arellano (Badge # 6889), Carcone (Badge # 7700), and Kansier (Badge # 4577), under 42 U.S.C. § 1983.  (Doc. 9 at 3-9.)  That statute "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Livadas v. Bradshaw,* 512 U.S. 107, 132 (1994).  It "afford[s] redress for violations of federal statutes, as well as of constitutional norms."  *Id.*

---

[3]Furthermore, even if his attorney's written notices to the prosecutor and jail were liberally construed as notice to the proper entity as in *Perez,* Plaintiff has not alleged that the notices complied with the FTCA's notice requirements, including a "sum certain damages claim."  *See* § 2675(a); *see also Frantz v. U.S.*, 29 F.3d 222, 224 (5th Cir. 1994) (notice requirement is satisfied where claimant gives agency written notice of claim sufficient to enable the agency to investigation and places a value on his or her claim).

7

Federal courts look to the law of the forum state to determine the length of the statute of limitations applicable in actions filed under 42 U.S.C. § 1983, *i.e.*, the state's limitations period for personal-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Texas, that limitations period is two years. *Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008). Accordingly, Plaintiff had two years from the date his § 1983 claims accrued to file suit. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).

While state law determines the length of the § 1983 limitations period, federal law determines the accrual date. *Wallace*, 549 U.S. at 388; *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir.2008), *cert. denied*, No. 08-9606, 2009 WL 908804 (Oct. 5, 2009). In general, a claim accrues "when the plaintiff has "a complete and present cause of action", or "when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citation and internal quotation marks omitted).

> "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" A plaintiff's awareness encompasses two elements: "(1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim. Actual knowledge is not required "if the circumstances would lead a reasonable person to investigate further."

*Piotrowski*, 237 F.3d at 576 (citations omitted); *accord*, *Walker*, 550 F.3d at 414.

Plaintiff's claims in this case admittedly accrued more than two years before he filed suit. (Doc. 14 at 3.) His answers to the questionnaires establish that he knew the factual basis for his tort claims on March 8, 2006, when he was arrested and detained. Because he did not file suit until August 26, 2010, his § 1983 claims are time-barred.

"Because the Texas statute of limitations is borrowed in § 1983 cases, Texas' equitable tolling principles also control." *See Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998).

8

"[W]hen state statutes of limitation are borrowed, state tolling principles are to be the 'primary guide' of the federal court. The federal court may disregard the state tolling rule only if it is inconsistent with federal policy." *See FDIC v. Dawson*, 4 F.3d 1303, 1309 (5th Cir. 1993) (citations omitted). The Fifth Circuit has stated that "[t]he doctrine of equitable tolling preserves a plaintiff's claims the strict application of the statute of limitations would be inequitable. *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 19956). However, federal law requires that litigants diligently pursue their actions before equitable tolling becomes available. *See Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999); *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989) ("equity is not intended for those who sleep on their rights").

Here, Plaintiff has alleged no facts to support a claim that he diligently pursued his § 1983 claims against the named DPD officers under Texas or federal law. Because he provides no basis for equitable tolling, his § 1983 claims against the named state officers should be dismissed for failure to file within the statutory limitations period.

### IV. BIVENS

Plaintiff also sues ATF agent Ashley Stephens (Badge # 4706) in his individual capacity under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 14 at 3.) In *Bivens*, the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court.[4]

---

[4]A *Bivens* action only provides a remedy for victims of constitutional violations by government officers in their individual capacities; it does not provide for a cause of action against the United States. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). Sovereign immunity protects the United States and the federal employees sued in their official capacities from constitutional claims asserted under *Bivens*. *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 380-81 (5th Cir. 1987). The United States may not be held liable on a theory of respondeat superior under *Bivens*. *See Cronn v. Buffington*, 150 F.3d 538, 544-45 (5th Cir. 1998). To the extent Plaintiff is attempting to assert a *Bivens* claims against the United States and its employees in their official capacities, the claims should be dismissed for lack of jurisdiction.

There is no federal statute of limitations for *Bivens* actions. The federal courts borrow the forum state's general personal injury limitations period. *See Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999), *cert. denied*, 539 U.S. 1274 (2000). Applying Texas law, the statute of limitations for a *Bivens* action is two years. *See id.* Federal law determines the date the cause of action accrues. *See Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001).

Here, Plaintiff complains of events which took place between March 8, 2006 and July 7, 2006.[5] Because he failed to file suit until August 26, 2010, his *Bivens* claims against the named ATF agent in his individual capacity is barred by the two-year statute of limitations for the same reasons as the § 1983 claims against the named DPD officers. *See Banks v. F.D.I.C.*, 374 Fed. App'x 532 (5th Cir. 2010); *Brown*, 188 F.3d at 590.

## V.  JOHN DOE CLAIMS

Plaintiff also brings suit against unidentified FBI Officers; Gang Unit Officer(s), Dallas Police Department Officer(s), and John Doe(s). (See MJQ at doc. 8.)

A civil rights action may be initiated against unidentified defendants when their true names are not yet known but may be learned. *See Bivens*, 403 U.S. at 390 n. 2 (1971) (noting that the district court ordered the complaint served upon the agents that arrested the plaintiff according to the records of the United States Attorney). "Although the use of a 'John Doe' is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants." *Green v. Doe*, 260 Fed. Appx. 717, *3 (5th Cir. 2007), *citing Colle v. Brazos County*, 981 F.2d 237, 243 n. 20 (5th Cir. 1993); *see also Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) (in certain circumstances, a plaintiff should be given the opportunity through discovery to

---

[5]Plaintiff complains of Defendants' failure to provide him medical care during the period between his arrest on March 8, 2006 until his surgery on July 7, 2006, approximately four months after his arrest. (See Compl. at 5.)

10

discover the identities of unnamed defendants); *Hittle v. City of Garland*, 1 F.3d 1236 (5th Cir. 1993) (unpublished opinion) (same). Discovery is warranted when it is possible that a plaintiff could identify unknown defendants by physical descriptions, partial names or nicknames, position, date, time and/or specifics of the incident, or from duty rosters and personnel records, records available to the defendants' representative, or known defendants who were participants in the same incident as the unknown defendant. *See Murphy*, 950 F.2d at 293 (identities of unknown defendants for whom plaintiff provided physical descriptions, partial names and positions, could be determined from duty rosters and personnel records); *Green*, 260 Fed. Appx. 717, at *2 (identity of unknown correctional officer could be determined based on physical description of officer on duty at time and place of incident); *Bivens*, 403 U.S. 390 n. 2 (identities of officers who arrested defendant could be determined from U.S. Attorney's records); *Munz v. Parr*, 758 F.2d 1254 (8th Cir. 1985) (unknown defendant was named with known defendants).

Here, Plaintiff claims that he needs discovery to identify the unnamed defendants. (Doc. 9 at 1.) it is possible that the identities of these defendants can be obtained through discovery of police reports and medical records. Plaintiff's suit against unknown defendants is therefore permissible. Because he filed it filed well after the limitations period expired, however, his *Bivens* and § 1983 claims against the unidentified individual defendants are time-barred for the same reasons as the *Bivens* and § 1983 claims against the named individual defendants.

## VII. VIENNA CONVENTION CLAIMS

Plaintiff claims that the defendants "Denied [Plaintiff's] rights afforded under "The Vienna Convention" and its treaties with Mexico, never was [Plaintiff] given these rights, nor was the Mexican Consulate notified of [Plaintiff's] arrest. (Doc. 9 at 11.)

11

"The Vienna Convention is a 79-article, multilateral treaty negotiated in 1963 and ratified by the United States in 1969...Mexico is a signatory nation." *United States v. Jimenez-Nava*, 243 F.3d 192, 195 (5th Cir. 2001)(citations omitted); *see also Vienna Convention on Consular Relations (Vienna Convention or Convention)*, Apr. 24, 1963, [1970] 21 U.S.T. 77, 100–101, T.I.A.S. No. 6820. It "governs 'the establishment of consular relations [and] defin[es] a consulate's functions in a receiving nation.'" *Id.* Article 36 of the Convention requires that arresting authorities notify a foreign national without delay of his rights to contact his consul. *Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004).

The Fifth Circuit has determined that the Vienna Convention does not confer a private, judicially-enforceable cause of action. *Id.* at 279–80; *Jimenez-Nava*, 243 F.3d at 195–98. Even assuming Plaintiff may bring suit for violation of the Vienna Convention under § 1983 or *Bivens,* his claims are clearly barred by the statute of limitations. In *Adi v. Knot*, 289 Fed. App'x 802, 802–03 (5th Cir. 2008) (per curiam), the Fifth Circuit affirmed a district court's *sua sponte* dismissal of a plaintiff's § 1983 claims based on alleged violations of the Vienna Convention as time-barred. The Fifth Circuit noted that because the plaintiff knew that the defendants had failed to advise him of his rights under the Vienna Convention by the time of his conviction at the latest, the limitations period began to run at that point and ended two years later. *Id.* His complaint, which was filed well after that, was therefore untimely. *Id.* Although it noted the Seventh Circuit's holding that a foreign national could sue under § 1983 claim for alleged violations of Article 36 of the Vienna Convention, it did not decide that issue. *See id.*

Here, a judgment of conviction on three counts of assault on a federal officer and one count of possession of a firearm during and in relation to a crime of violence was entered against Plaintiff

on November 8, 2007. *See U.S. v. Ortega*, 3:06-CR-334-B (N.D. Tex.). He was therefore aware by that date of the alleged violations of the Vienna Convention at the latest, and his lawsuit was filed well over two years later. He has not asserted any basis for equitable tolling, so any claims under § 1983 or *Bivens* based on violations of the Vienna Convention are barred by limitations.

## VIII. CONCLUSION

Plaintiff's action should be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) based on his failure to file suit within the statutory period of limitations. This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C.§ 1915(g).[6]

**SO RECOMMENDED on this 8th day of December, 2011.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[6] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE